# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BULGARI, S.p.A., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE PARTNERSHIPS and ) <br> UNINCORPORATED ASSOCIATIONS ) <br> IDENTIFIED ON SCHEDULE "A," ) <br> ) <br> Defendants. ) | Case No. 14-cv-4819 <br><br> **Judge Ronald A. Guzman** <br><br> **Magistrate Judge Mary M. Rowland** |

## REPORT AND RECOMMENDATION

Plaintiff Bulgari, S.p.A. ("Bulgari") brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A to the Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cybersquatting (Count III), and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count IV).

## I. STATEMENT OF FACTS

As alleged in the Complaint, the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling counterfeit products, including jewelry, watches and other merchandise, bearing counterfeit versions of Bulgari's trademarks (collectively, the "Counterfeit BVLGARI Products") through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores").

The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine BVLGARI Products, while actually selling low-quality, unlicensed

1

Counterfeit BVLGARI Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as website design and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their massive counterfeiting operation. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Bulgari's business within this Judicial District, and have caused and will continue to cause irreparable injury to Bulgari.

Defendants facilitate sales of Counterfeit BVLGARI Products by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine BVLGARI Products. *See* Docket Entry 11 at ¶ 17. The Defendant Internet Stores look sophisticated and accept payment in U.S. dollars. *Id.* Numerous Defendant Domain Names also incorporate the BVLGARI Trademarks into the URL, and oftentimes Defendants include Bulgari's copyright-protected content, images, and product descriptions on their websites to make it very difficult for consumers to distinguish such counterfeit sites from an authorized retailer. *Id.* Some of the Defendant Internet Stores even go so far as to admit to selling counterfeit products, explicitly stating that they are offering "replica" or "fake" BVLGARI Products for sale. *Id.* at ¶ 16. Bulgari has not licensed or authorized Defendants to use any of the BVLGARI Trademarks, and none of the Defendants are authorized resellers of genuine BVLGARI Products. *Id.* at ¶ 17.

The Defendant Internet Stores accept payment via Western Union, credit card and/or PayPal and ship the Counterfeit BVLGARI Products in small quantities via international mail to

minimize detection by U.S. Customs and Border Protection. *Id.* at ¶ 18. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.*

Defendants also deceive unknowing consumers by using the BVLGARI Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for BVLGARI Products. *Id.* at ¶ 19. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics to increase website rank. *Id.* As a result, links to Defendants' websites show up at or near the top of popular search results and misdirect consumers searching for genuine BVLGARI Products. *Id.*

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id.* at ¶ 20. Many of Defendants' names and addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities or states. *Id.* Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. *Id.* On information and belief, Defendants constantly register new Defendant Internet Stores using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendant Internet Store registration patterns are one of many tactics used by the Defendants to conceal both their identities and the full scope and interworking of Defendants' massive counterfeiting operation. *Id.* Another tactic commonly used by Defendants to thwart enforcement efforts is to constantly change the location to which the Defendant Domain Names redirect. *Id.*

Even though Defendants operate under multiple fictitious names, many similarities between the Defendant Internet Stores indicate a coordinated effort to sell Counterfeit BVLGARI Products. *Id.* at ¶ 21. For example, many of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective domain names. *Id.* In addition, Counterfeit BVLGARI Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit BVLGARI Products were manufactured by and come from a common source and that Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Bulgari's official bulgari.com website. *Id.*

On July 1, 2014, this Court granted Bulgari's *ex parte* Motion for Entry of a (1) Temporary Restraining Order, (2) Domain Name Transfer Order, (3) Asset Restraining Order, (4) Expedited Discovery Order, and (5) Service of Process by Email and Electronic Publication ("the TRO"). *See* Docket Entry 33. The TRO was extended by the Court and will expire on July 29, 2014, pursuant to Federal Rule of Civil Procedure 65(b)(2). *See* Docket Entry 26. The TRO authorized Bulgari to provide notice of these proceedings and the preliminary injunction hearing to Defendants by electronic mail at the e-mail addresses identified in Schedule A to Bulgari's Complaint and electronic publication at the Defendant Domain Names that have been transferred to Bulgari's control. TRO at ¶ 8. Since and pursuant to entry of the TRO, dozens of PayPal ac-

counts associated with Defendants' websites have been frozen. *See* Docket Entry 35-1, at ¶ 2. In addition, Bulgari is in the process of requesting transfer of the Defendant Domain Names. *Id*.

On July 11, 2014, Plaintiff filed a motion for preliminary injunction. *See* Docket Entry 34. On July 16, 2014, the Court held a hearing on Plaintiff's motion for a preliminary injunction. No Defendant appeared at the preliminary injunction hearing or submitted any written objection to the motion. For the reasons set forth below, the Court recommends that the TRO be converted to a preliminary injunction against Defendants, so that they remain enjoined from the manufacture, importation, distribution, offer for sale, and sale of Counterfeit BVLGARI Products during the pendency of this litigation. As part of the Preliminary Injunction, the Court recommends that Defendant Domain Names remain in Bulgari's control and Defendants' PayPal accounts and funds remain frozen until completion of these proceedings.

## II. DISCUSSION

### i) Standard for Preliminary Injunction

Since the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit, the requirements for entry of a preliminary injunction extending the TRO have been satisfied. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the

Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

    (1) **Likelihood of Success on the Merits**

        (a) **Trademark Claims**

Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the defendant "without the consent of the registrant ... use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a)(1). Under the

UDTPA, a defendant is liable for, among other things: (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with another. 815 ILCS § 510/2(a).

Bulgari's Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011); *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claims under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.") (quoting *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004)). Moreover, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks .... Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (internal citations omitted).

To prove a *prima facie* case of trademark infringement, Bulgari must show that: (1) the BVLGARI Trademarks are distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the BVLGARI Trademarks; and (3) Defendants' use of the BVLGARI Trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted).

Regarding the first two elements, Bulgari's BVLGARI Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The BVLGARI Trademarks have been used exclusively and continuously by Bulgari for years, some since at least as early as 1970. *See* Docket Entry 11 at ¶ 10. Furthermore, Bulgari has not licensed or authorized Defendants to use any of the BVLGARI Trademarks, and none of the Defendants are authorized resellers of genuine BVLGARI Products. *Id.* at ¶ 17.

In determining whether a plaintiff satisfies the third element of a Lanham Act claim, that the challenged mark is likely to cause confusion among consumers, the Seventh Circuit has identified seven relevant factors: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

Bulgari plainly satisfies the likelihood of confusion test. The Defendants are selling low-quality, counterfeit versions of products that look similar to BVLGARI Products and use counterfeit marks identical to the BVLGARI Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Bulgari.

Bulgari also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Bulgari and Defendants advertise and sell their products to consumers via the Internet. Both parties use the same means and the same channels of commerce to target the same Internet consumers looking for genuine BVLGARI Products. The Defendant Internet Stores advertise and sell Counterfeit BVLGARI Products online, just as Bulgari advertises and sells its genuine BVLGARI Products online at us.bulgari.com.

Regarding the fourth factor, degree of consumer care, consumers purchasing BVLGARI Products are not a certain, specialized group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union,* 142 F. Supp. 2d at 1043 (citation omitted). Further, the Counterfeit BVLGARI Products offered for sale on the Defendant Internet Stores are typically priced slightly below standard retail prices, making it very difficult for consumers to determine that the products are counterfeit. Taking into account the diverse group of Bulgari consumers and the closely related pricing schemes between the Counterfeit BVLGARI Products and the genuine BVLGARI Products, consumers are very likely to be confused, so this factor favors Bulgari.

Due to their long-standing use and wide acceptance by the public, the BVLGARI Trademarks have become famous and associated with high quality BVLGARI Products. The BVLGARI Trademarks are distinctive when applied to the BVLGARI Products. The marks sig-

nify to consumers that the products come from Bulgari and are manufactured to Bulgari's high quality standards. Consumers have come to recognize the BVLGARI brand as a source of luxury watches, jewelry and accessories. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Bulgari.

As for the sixth factor, actual confusion, Bulgari has submitted extensive evidence showing that Defendants are selling Counterfeit BVLGARI Products that look virtually identical in appearance to genuine BVLGARI Products. *See* Docket Entries 27-30. Bulgari does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendants are selling counterfeit versions of BVLGARI Products that use the same BVLGARI Trademarks. Because the goods look nearly identical, consumers will be confused and think that Defendants' products are genuine BVLGARI Products or are sponsored or endorsed by Bulgari.

Regarding the seventh and final factor, Defendants are intentionally using the BVLGARI Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit BVLGARI Products are manufactured by or emanate from Bulgari. Defendants use the BVLGARI marks in many of the Defendant Domain Names, such as bvlgariwatches.info and topbulgari.com, and they advertise products that look almost identical to genuine BVLGARI Products and bear the BVLGARI Trademarks. *See* Docket Entries 27-30, 31. Defendants are

purposefully attempting to benefit and trade off of Bulgari's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Bulgari's favor.

Taking the evidence as a whole, Bulgari is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin under the Lanham Act, and violation of the UDTPA sufficient to support the entry of a preliminary injunction.

(b) **Cybersquatting**

Bulgari also sues Defendants for cybersquatting. Pursuant to the Anticybersquatting Consumer Protection Act of 1996 (ACPA), a person alleged to be a cybersquatter is liable to the owner of a protected mark if that person: (i) has a bad faith intent[1] to profit from the mark; and (ii) registers, traffics in, or uses a domain name that … is identical or confusingly similar to or dilutive of a mark that is "distinctive" or "famous." 15 U.S.C. § 1125(d)(1)(A).

The BVLGARI Trademarks are highly distinctive, well-known and famous marks among consumers in the United States and worldwide, as evidenced by the success of the brand and the extensive, unsolicited media coverage of the brand. *See* Docket Entry 11 at ¶¶ 7 and 11. Defendants register, traffic in and use domain names that are identical or confusingly similar to Bulgari's distinctive and famous BVLGARI Trademarks. As described above, many of the Defendant Domain Names directly incorporate the marks "BVLGARI" and "BULGARI," and Defendants use copyright-protected photographs of BVLGARI Products and logos without a license in order to sell Counterfeit BVLGARI Products. *See* Docket Entries 27-30, 31. These facts

---

[1] The ACPA identifies nine factors to consider in assessing bad-faith intent, including: (1) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark; (2) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (3) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (4) the extent to which the mark incorporated in the person's domain name is not distinctive or famous. 15 U.S.C. § 1125(d)(1)(B)(i). A court is not limited to considering only the enumerated factors, and "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case.'" *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 268 (4th Cir. 2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)).

manifest bad faith intent to profit from the BVLGARI Trademarks, and the Court should find that Bulgari is likely to succeed on the merits of its ACPA claim.

ii) **Irreparable Harm and Inadequate Remedy at Law**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the BVLGARI Trademarks has and continues to irreparably harm Bulgari through diminished goodwill and brand confidence, damage to Bulgari's reputation, loss of exclusivity, and loss of future sales. *See* Docket Entry 11 at ¶¶ 22-26. The extent of the harm to Bulgari's reputation and goodwill and the possible diversion of customers due to

loss in brand confidence are both irreparable and incalculable, thus warranting conversion of the TRO issued by this Court on July 1, 2014, to a preliminary injunction.

### iii) Balancing the Harms and Public Interest

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Bulgari has demonstrated, Defendants have been profiting from the sale of Counterfeit BVLGARI Products. Thus, the balance of equities tips decisively in Bulgari's favor. An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Bulgari's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469. In this case, the injury to the public is significant, and the injunctive relief that Bulgari seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

### iv) The Equitable Relief Sought Remains Appropriate

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

#### (1) The Domain Name Transfer Order Remains Appropriate

Bulgari seeks a conversion of the TRO issued by this Court on July 1, 2014, allowing Bulgari to retain control of the Defendant Domain Names until the completion of these proceedings. To prevent the Defendants from further manufacture, importation, distribution, offering for sale, and sale of Counterfeit BVLGARI Products and to provide notice to Defendants regarding these proceedings, it is my recommendation that the injunctive relief already awarded be extended through the pendency of this case.

#### (2) The Asset Restraining Order Remains Appropriate

Bulgari also requests conversion of the TRO to a preliminary injunction so that Defendants' U.S.-based financial accounts remain frozen. Since entry of the TRO, PayPal has provided Plaintiff with information, including the identification of dozens of PayPal accounts linked to the Defendants' websites which were offering for sale and/or selling Counterfeit BVLGARI Products. In the absence of a preliminary injunction, Defendants may attempt to move any assets from any U.S.-based financial accounts, including PayPal accounts, to an offshore account. Therefore, Defendants' assets should remain frozen for the remainder of the proceedings.

The amount of damages to which Bulgari is entitled as set forth in the Complaint far exceeds any amount contained in any of the Defendants' frozen PayPal accounts. For example, Bulgari's prayer for relief requests statutory damages of $2 million from each Defendant. In addition, and as established in Bulgari's TRO Memorandum, many federal courts, including the Northern District of Illinois, have granted orders preventing the fraudulent transfer of assets.

*See, e.g., Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 1:03-cv-04844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

## III. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's motion for a preliminary injunction (Docket Entry No. 34) be GRANTED, under the terms that were employed in the TRO. Counsel has 14 days from the date of service of this Court's Report and Recommendation to file objections with the Honorable Ronald A. Guzman. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object timely constitutes a waiver of the right to appeal. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

E N T E R:

Dated: July 18, 2014

*/s/ Mary M. Rowland*

MARY M. ROWLAND
United States Magistrate Judge