# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BULGARI, S.p.A., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **No.** 14 cv 4819 |
| | ) | |
| The Partnerships and Unincorporated | ) | **Judge Ronald A. Guzmán** |
| Associations Identified on Schedule 'A,' | ) | |
| | ) | **Magistrate Judge Mary M. Rowland** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff faces a conundrum. Plaintiff's complaint alleges federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cybersquatting (Count III), and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count IV) against hundreds of unidentified defendants controlling an even greater number of ".com" websites selling counterfeit plaintiff brand name products. Because defendants attempt to avoid liability by going to great lengths to conceal their identities and because the Court found there existed a danger that defendants would close their websites and empty their accounts of funds received from sale of their counterfeit products if given prior notice, the temporary restraining order hearing was *ex parte*. After the entry of a temporary restraining order, the motion for preliminary injunction was referred to the magistrate judge. Before its expiration, the magistrate judge continued the temporary restraining order for another fourteen days to July 29, 2014. Subsequently, on July 18, 2014, the magistrate judge's report and recommendation (Dkt. #38) issued. Objections to the report must be filed within 14 days thereof, *i.e.* by August 1, 2014. But,

by August 1, 2014 the *ex parte* temporary restraining order will have expired leaving the frozen accounts again accessible to the defendants to drain the funds (proceeds of the fraudulent sales) from them.

In order to avoid the automatic expiration of the temporary restraining order before the preliminary injunction may be entered, the Court has undertaken a de novo review of the magistrate judge's report and recommendation even though no objections have been filed. Pursuant to the Court's temporary restraining order BULGARI has provided notice of the preliminary injunction hearing to Defendants by electronic mail at the e-mail addresses identified in Schedule A to BULGARI's Complaint and electronic publication at the Defendant Domain Names that have been transferred to BULGARI's control. No defendants have filed an appearance, objection or other pleading in response thereto, nor has any defendant appeared at the preliminary injunction hearing.1

The Court concurs with the magistrate judge's finding that through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Complaint the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling counterfeit products, including jewelry, watches and other merchandise, bearing counterfeit versions of BULGARI's trademarks. Defendants design their internet stores so that they appear to the consumer to be

---

1 Plaintiffs have advised the Court that they have heard from some of the domain name defendants by email inquiring as to why their accounts were frozen, but these inquiries have not included any identifying information such as would allow more traditional means of service, nor have they expressed any interest in contesting the lawsuit.

authorized online sellers of genuine BVLGARI products, when in fact, they are not. Defendants also use, without authorization, plaintiff's trademarks in order to attract consumers conducting internet searches looking for legitimate BVLGARI products to their websites, rather than to legitimate BVLGARI or BVLGARI authorized websites. *See* Decl. of Laurence Morel-Chevillet filed in support of plaintiff's motion for preliminary injunction (#11).

As the report and recommendation points out, the ultimate test in claims pursuant to both The Illinois Uniform Deceptive Trade Practices Act and the Lanham Act is whether the public is likely to be deceived or confused by the similarity of the marks. *Two Pesos,Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). In that regard, plaintiff has established that its trademarks are famous and inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. Plaintiff has not licensed or authorized the defendants as resellers of its products, or to use its trademarks in any manner. Furthermore, plaintiff's submissions have established that Defendants are selling low quality, counterfeit versions of products that look similar to BVLGARI products and use counterfeit marks identical to the BVLGARI Trademarks. Clearly, the unauthorized use of plaintiff's trademarks is being done in the same channels of commerce and target's the same consumers.

Defendants are targeting the same consumers, selling similar products for similar use and utilizing the same channels of commerce to target these consumers. The consumers being targeted are the general population and, as such, have no specialized knowledge or skill that would allow them to discern between defendant's low-quality copies and plaintiffs"s genuine

products when plaintiff's established trademark and brand name are attached to both. The potential for confusion here is great, especially at the point-of-sale were the consumer sees only defendant's' photographs of nearly identical products with plaintiff's trade names and trademarks appearing on the website and in the description of the products.

The Court finds that the evidence as a whole is more than sufficient to establish a likelihood of success on the merits as to the alleged violations of the Lanham Act and the UDTPA.

Count III of the Complaint also alleges a cause of action for violation of the Anti-cybersquatting Consumer Protection Act, 15 USC §1125(d), in the operation of a domain name incorporating the plaintiff's trademarks. The gist of this action is the allegation that defendants have acted with bad faith and to profit from the unauthorized use of the BVLGARI Trademarks by registering domain names identical to, or confusingly similar to the BVLGARI Trademarks. The Court concurs with the findings of the magistrate judge. The defendants register, traffic in and use domain names that are identical or confusingly similar to plaintiff's famous and distinctive "BVLGARI" and "BULGARI" marks, use photographs of BVLGARI products and of logos in order to sell their own counterfeit BVLGARI products. Some of the many Defendant Domain Names directly incorporate the marks "BVLGARI" and "BULGARI," and Defendants use copyright-protected photographs of BVLGARI Products and logos without a license in order to sell their counterfeit BVLGARI Products.

Damage to any trademark holder's goodwill is irreparable injury for which the trademark owner has no adequate legal remedy. *Eli Lilly &Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000). By selling inferior quality goods which purport to be genuine BVLGARI products, defendants erode plaintiffs' well established reputation for producing and selling high quality merchandise. Such damage is seldom compensable in money alone in part because the extent of the damage is difficult if not impossible to ascertain. It is not possible to establish the extent, either geographic, in time, or degree of the resulting damage to reputation. Thus, proving the amount of loss in monetary value is seldom possible. Indeed, once consumer confidence is lost there is no magic formula for regaining it.

For all the above reasons, plaintiff's motion for preliminary injunction is granted as specified below, subject to the defendant's' right to object to the magistrate judge' s report and recommendation and move for reconsideration on or before August 1, 2014.

**PRELIMINARY INJUNCTION ORDER**

THIS CAUSE being before the Court on Plaintiff Bulgari, S.p.A.'s ("Bulgari") Motion for Entry of a Preliminary Injunction, against the Partnerships and Unincorporated Associations identified on Schedule A to Plaintiff's Complaint (collectively, the "Defendants") the Court orders that:

1. Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be preliminarily enjoined and restrained from:

a. using the BVLGARI Trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine BVLGARI product or not authorized by Bulgari to be sold in connection with the BVLGARI Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine BVLGARI Product or any other product produced by Bulgari, that is not Bulgari's or not produced under the authorization, control or supervision of Bulgari and approved by Bulgari for sale under the BVLGARI Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Bulgari, or are sponsored by, approved by, or otherwise connected with Bulgari;

d. further infringing the BVLGARI Trademarks and damaging Bulgari's goodwill;

e. otherwise competing unfairly with Bulgari in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Bulgari, nor authorized by Bulgari to be sold or offered for sale, and which bear any of the BVLGARI Trademarks or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, the Online Marketplace Accounts, the Defendant Domain Names or any other domain name or online marketplace account that is being

used to sell or is the means by which Defendants could continue to sell Counterfeit BVLGARI Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product bearing the BVLGARI Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine BVLGARI Product or not authorized by Bulgari to be sold in connection with the BVLGARI Trademarks.

2. The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within two (2) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Bulgari's selection until further ordered by this Court, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to a registrar of Bulgari's selection until further ordered by this Court.

3. Those in privity with Defendants and with actual notice of this Order, including any online marketplaces such as iOffer, social media platforms such as Facebook, YouTube, LinkedIn and Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, domain name registrars and domain name registries, shall within two (2) business days of receipt of this Order:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit and infringing goods using the BVLGARI

Trademarks, including any accounts associated with the Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the BVLGARI Trademarks; and

c. Take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

4. Any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, advertisers, Facebook, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers including PayPal, Western Union, third party processors and other payment processing service providers, shippers, domain name registrars and domain name registries (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Bulgari copies of all documents and records in such person's or entity's possession or control relating to:

a. The identities and addresses of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them and the locations and identities of Defendants' operations, including, without

limitation, identifying information associated with Defendants' websites, the Defendant Domain Names, financial accounts and money transfers;

b. Defendants' websites;

c. The Defendant Domain Names or any domain name registered by Defendants; and

d. Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions including, without limitation, PayPal, Western Union, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

5. Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

6. Western Union shall, within two (2) business days of receipt of this Order, block any Western Union money transfers and funds from being received by the Defendants identified in Schedule A until further ordered by this Court.

7. Any banks, savings and loan associations, payment processors, PayPal, Inc. ("PayPal") or other financial institutions, for any Defendant or any of Defendants' Online Marketplace Accounts or websites shall, within two (2) business days of receipt of this Order:

a. Locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts connected to the email addresses listed in Schedule A; and

b. Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

8. Schedule A and Exhibits 5 and 6 attached to the Declaration of Laurence Morel-Chevillet are unsealed.

9. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Bulgari or on shorter notice as set by this Court.

10. The $10,000 bond posted by Bulgari shall remain with the Court until a Final disposition of this case or until this Preliminary Injunction is terminated.

DATED July 29, 2014

**SO ORDERED**

---

**RONALD A. GUZMÁN**
**District Judge**